### INTERNATIONAL UNION OF OPERATING ENGINEERS, et al., Relators,

### v.

### MINNEAPOLIS CIVIL SERVICE COMMISSION, Respondent.

### No. C6–87–138.

Court of Appeals of Minnesota.

July 14, 1987.

Maurice O'Brien, Joseph B. Nierenberg, Gordon, Miller & O'Brien, Minneapolis, for relators.

Robert J. Alfton, Minneapolis City Atty., Allen R. Hyatt, Jerome R. Jallo, Asst. City Attys., Minneapolis, for respondent.

Heard, considered and decided by PARKER, P.J., and SEDGWICK and LANSING, JJ.

### OPINION

LANSING, Judge.

Relators, individual construction equipment operators and their bargaining representative, International Union of Operating Engineers, Local 49, filed a petition for certiorari on the Minneapolis Civil Service Commission's decision to refuse equipment operators' applications to test for the position of construction foreman. Because the Commission's exclusion of the equipment operators from promotional testing bears no rational relationship to any legitimate governmental purpose, we vacate the Commission's ruling which precludes construc-

tion equipment operators as a class from applying to test for promotion to construction foreman.

## FACTS

On June 12, 1986, the Minneapolis Civil Service Commission posted notice of promotional examinations for approximately 20 foreman positions in four departments: Bridge Maintenance, Street Maintenance and Repair, Paving Construction, and Sewer Construction. The Commission required each applicant to have seven years experience in a labor classification within the department and two or three years recent experience in the department where the foreman opening existed.

Only persons classified as laborers could apply for the foreman job. Relators' applications to test for the job were rejected because each was classified as a construction equipment operator, which is outside the designated promotional lines for the position. The only job available to operators through promotion is the dispatcher position.

On June 24, 1986, the Commission held a meeting and heard argument from the equipment operators' bargaining representative, the International Union of Operating Engineers, Local 49, on the city's restrictive eligibility requirements for participating in the promotional examination process. The Commission took the matter under advisement and deferred further action on the issue pending negotiation between the city, the equipment operators, and Local 49. During negotiation, the equipment operators reviewed the past eligibility criteria for the foreman position and proposed a set of experience requirements, but the city did not respond and the matter was eventually referred back to the Commission for final decision.

The Commission denied the equipment operators' appeals on December 23, 1986. Although the operators appeared to have the necessary experience for the job, the Commission decided to maintain promotional lines and abide by the previously adopted criteria. However, the Commission directed its staff "to conduct a study of the promotional lines to determine how to consider in the future those employees who may have the necessary experience to be considered for promotion." In addition, the staff was directed to "determine why the change was made in the past that restricted the applicants to those in the laborer classifications and when that was done."

Operators have been eligible for the foreman position in the past. Commission records indicate that operators were allowed to test for foreman in 1966 in order to widen the pool of applicants. Some former operators appointed to foreman at the time are still working in that position. However, sometime after 1968, the Commission withdrew operators from the eligible classifications without explanation. In 1975 the Commission staff reviewed the eligibility requirements for construction foreman and took the position that operators and truck drivers do not have the breadth of knowledge and experience necessary to make sound technical decisions, give technical instruction, and train new employees. The Commission followed the staff recommendation, and operators as a class have been excluded from applying for foreman since that time, regardless of their individual experience.

Each of the appealing equipment operators has at least 19 years construction experience either with the city or in the private sector. Some held foreman positions in the private sector before being hired by the city as operators.

After their appeals were denied by the Commission, the operators petitioned this court, claiming the Commission violated their rights to equal protection. We granted the writ on January 30, 1987, and issued an order staying the Commission decision pending resolution of this appeal.

## ISSUE

Did the Minneapolis Civil Service Commission violate the equipment operators' right to equal protection by refusing to allow them to examine for the construction foreman position?

## ANALYSIS

Under the Minneapolis home rule charter, the Minneapolis Civil Service Commission has the power to hire and set the promotional guidelines for municipal employees. Each position within the classified service is graded and classified, *see Minneapolis City Charter* Ch. XIX, § 6, and the Commission has the power to adopt rules to govern the application and examination process. *Minneapolis City Charter* Ch. XIX, § 7. Among other things, the rules provide for public competitive examinations to test the relative fitness of each applicant, Civil Service Commission Rule 6.07, and allow the commission to restrict examinations to specific occupational groups. Civil Service Commission Rule 6.06(C).

The equipment operators claim the Commission violated their constitutional right to equal protection by denying them access to promotional examinations on the basis of their trade and without regard to individual merit. Although the Commission claims its action falls within the wide discretion afforded it under the city charter, *see Carter v. Gallagher*, 452 F.2d 315, 323 (8th Cir. 1971), *cert. denied*, 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972), the decision cannot stand if it violates constitutional guarantees, controlling state legislation or the provisions of the home rule charter. *State ex rel. Coduti v. Hauser*, 219 Minn. 297, 303, 17 N.W.2d 504, 507 (1945).

Our inquiry begins with the traditional standard of review applicable to equal protection cases dealing with social or economic legislation and non-suspect classifications: the rational basis test.[1]

To survive challenge, a classification must apply

> uniformly to all those similarly situated; be necessitated by genuine and substantial distinctions between the two groups; and effectuate the purpose of the law.

*Bituminous Cas. Corp. v. Swanson*, 341 N.W.2d 285, 287 (Minn.1983) (citing *Nelson v. State, Department of Natural Resources*, 305 N.W.2d 317, 319 (Minn.1981)). In this case that test is not satisfied.

First, the city's classification does not apply uniformly to all those similarly situated. In order to find a denial of equal protection by discriminatory administration of the laws, we must find that "the persons treated disparately are similarly situated." *State, by Spannaus v. Lutsen Resorts, Inc.*, 310 N.W.2d 495, 497 (Minn.1981). In this case the challenged rule allows the Commission to exclude classes of employees from applying for certain municipal positions. Although the rule itself does not create a classification, the inherent power to exclude distinguishes between classes of employees eligible to apply for a position and those who are not.

From the record before us, it appears that there are several groups of workers who work under the supervision of the same foreman. Among these groups are asphalt rakers, cement finishers, pipe layers, grade setters, and equipment operators. All, except the last group, constitute a category called laborers.

According to the Department of Public Works (DPW), "[l]aborers are specialists * * * who have extensive knowledge and experience in their particular areas." Equipment operators, too, are specialists who develop knowledge and experience in their particular areas. On these facts, all groups working under the same foreman, while having different specialties, appear to have the same breadth of experience. Hence, the relators are similarly situated to those called laborers even though only the latter group is eligible for promotion to foreman. Prohibiting relators from testing for the foreman position is disparate treatment which fails the first prong of the rational basis test.

Second, the classification is not necessitated by genuine and substantial distinctions between the group who may be pro-

---

1. Strict scrutiny is not appropriate here because the right to be fairly considered for public employment is not a fundamental right, *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976); *Koelfgen v. Jackson*, 355 F.Supp. 243, 250 (D.Minn.1972), *aff'd*, 410 U.S. 976, 93 S.Ct. 1502, 36 L.Ed.2d 173 (1973), and construction equipment operators are not considered a suspect class. *See Murgia*, 427 U.S. at 313, 96 S.Ct. at 2566–67.

moted and the group who may not. The only apparent distinction between the several groups called laborers and the equipment operators is that members of the latter group often drive a vehicle on the job.

Nothing on this record suggests, for example, that an asphalt raker knows anything more about the tasks performed by a pipe layer than does an equipment operator. Nevertheless, the asphalt raker is eligible to apply for a foreman's job—supervising both the pipe layer and the equipment operator—while the equipment operator is denied that opportunity.

Since all groups work on the same job sites, are supervised by common foremen, and perform within their own specialties, the distinction which precludes one of those groups from promotion is insubstantial and disingenuous.

And, finally, the disparate treatment of equipment operators promotes neither the purpose of the rules adopted by the Civil Service Commission nor the purpose of establishing requirements articulated by the DPW. One of the stated purposes of the rules adopted by the Commission is to "recruit[ ], select[ ], and advance[ ] employees on the basis of their relative abilities, knowledge, and skills * * *." Civil Service Commission Rule 1.01(E). The current policy ignores the abilities, knowledge and skills of the equipment operators. Each of the relators has at least 19 years of construction experience. Some have prior experience as supervisors and one was a construction foreman in the private sector. Prohibiting this group from testing for the foreman position contradicts the purpose of the Commission's rule.

The DPW lists as its purposes for establishing requirements:

(1) Insure that all applicants have certain basic skills, education, or experience that would be necessary in order for them to perform that job;

(2) In the case of a promotional exam, to identify those groups of employees who have the best and most relevant experience for the position;

(3) To limit the total number of applicants to a reasonable level while still providing adequate opportunity and competition to take place.

While we acknowledge that these are all legitimate ends for government to pursue, the application of the Commission's rule in this instance does not further these goals. The testing process itself measures the individual's capabilities. The present policy of excluding equipment operators accomplishes nothing toward ensuring basic skills and identifying employees with the most relevant experience for foremen.

The Commission had no reasonable explanation for why operators were to be excluded from the examination. Articulated reasons for such policies may not be absolutely essential to meet constitutional requirements. *See United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980). Nevertheless, operators have been allowed to apply for foremen positions in past years, and the Commission not only lacked an explanation for the change of policy, it evidenced a total absence of a rational basis by instructing the staff to study why the operators were removed from eligibility in the first place.

A possible reason for excluding certain classes of employees from applying for a position might be for reasons of administrative convenience. We have upheld administrative procedures necessary to limit the pool of applicants to a manageable number. *Anderson v. City of Minneapolis*, 363 N.W.2d 886, 890 (Minn.Ct.App. 1985). However, no evidence suggests a flood of applications here. Nor can we, on the facts before us, construct any rational basis for prohibiting operators from sitting for the exam when others similarly situated may test.

The rational basis test affords appropriate deference to legislatures on social and economic decisions. Unfortunate or unworkable decisions in these areas "will eventually be rectified by the democratic process * * *." *Matter of McCannel*, 301 N.W.2d 910, 918 (Minn.1980) (quoting *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979)). We are mindful that the democratic process may correct the inequities of a non-elected com-

mission less effectively. Nonetheless, commission decisions, as well as legislative decisions, are similarly included in the rational basis test. But even under this most deferential standard, the means chosen to implement the Commission's rule must still fail unless they rationally relate to the legitimate interests of the city. *See City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). After analysis of the purpose for the Commission's rule and the means of its implementation, we fail to find a rational basis for the disparate treatment of these similarly situated workers.

We find on certiorari that there is no evidentiary basis for the Commission's refusal to allow operators to test for the foreman position. The Commission ruling of December 23, 1986, is vacated and we remand this matter with instructions to allow relators and construction equipment operators of demonstrated experience to test for the promotion.

### DECISION
Vacated and remanded.