Marlys PETERSON, et al., Petitioners,

v.

MINNESOTA DEPARTMENT OF
LABOR AND INDUSTRY,
Respondent.

No. C0–98–1734.

Court of Appeals of Minnesota.

March 23, 1999.

Review Denied May 18, 1999.

Douglas Peine, St. Paul, MN (for petitioners)

Michael A. Hatch, Attorney General, Julie Swedback, Assistant Attorney General, St. Paul, MN (for respondent)

Christopher M. Hood, Flaherty & Koebele, P.A., St. Paul, MN (for amicus curiae Minnesota Association of Rehabilitation Providers)

Considered and decided by KALITOWSKI, Presiding Judge, SHORT, Judge, and KLAPHAKE, Judge.

## OPINION

KALITOWSKI, Judge.

Petitioners invoke our declaratory power under Minn.Stat. § 14.44 (1998) to determine whether Minn. R. 5220.1900, subpts. 1b and 1c (1993), which freezes and caps the hourly rates of qualified rehabilitation consultants, violates the Equal Protection Clauses of the Minnesota and United States Constitutions.

## FACTS

In 1992, in response to the rising costs of rehabilitative services, the Minnesota legislature directed the Commissioner of the Department of Labor and Industry (the department) to establish a fee schedule or to limit fees charged by qualified rehabilitation consultants (QRCs). Minn.Stat. § 176.102, subd. 2 (1992). Prior to this directive, QRCs set their own fees, although QRCs were required to register their hourly rates with the department on an annual basis. *See* Minn. R. 5220.1500, subpt. 3 (1992). In response to the legislative directive, the department, after determining that the median fee charged by QRCs was $65 per hour, proposed the rule at issue. An administrative law judge conducted a public hearing on the proposed rule and subsequently recommended that the rule be adopted. The rule was adopted by the department on May 28, 1993, and became effective on June 21, 1993. 17 Minn. Reg. 3364.

The rule, which applies only to services provided at an hourly billing rate, states in relevant part:

Subpt. 1b. **Fees.** Fees for rehabilitation services for the period from June 28, 1993 to September 20, 1993, shall not be increased beyond the level of the hourly rates on file with the commissioner as of July 15, 1992. Fees may be increased annually beginning October 1, 1993, but any annual increase is limited by the annual adjustment under Minnesota Statutes, section 176.645.

Subpt. 1c. **Consultants.** When billing on an hourly basis for the services of qualified rehabilitation consultants, a qualified rehabilitation consultant or qualified rehabilitation consultant firm shall bill at an hourly

rate not to exceed $65 per hour as adjusted under subpart 1b. A rehabilitation provider shall bill one-half of the hourly rate for travel and wait time. * * *

Minn. R. 5220.1900 (1993).

Under the rule, the hourly fees of QRCs and their firms have been frozen at the lesser of: (1) the hourly rate each QRC registered with the department as of July 15, 1992; or (2) $65 per hour. The rates are adjusted by a uniform annual percentage increase. Petitioners are QRCs and QRC firms whose rates were frozen at an amount less than $65 per hour. They argue that the fee arrangement results in disparate treatment in violation of the Equal Protection Clauses of the Minnesota and United States Constitutions and request a declaratory judgment finding the rule invalid.

## ISSUE

On its face, does Minn. R. 5220.1900, subpts. 1b and 1c, violate the Equal Protection Clauses of the Minnesota and United States Constitutions?

## ANALYSIS

■ The validity of a rule may be determined upon petition for a declaratory judgment addressed to the court of appeals when the rule threatens to interfere with the rights or privileges of the petitioner. Minn.Stat. § 14.44 (1998). The court shall declare the rule invalid if it violates constitutional provisions. Minn.Stat. § 14.45 (1998).

■ A declaratory judgment action brought under Minn.Stat. § 14.44 is a pre-enforcement challenge, questioning the validity of the process by which the rule was made and its general validity before it is enforced against any particular party. *Minnesota Chamber of Commerce v. Minnesota Pollution Control Agency*, 469 N.W.2d 100, 102 (Minn.App.1991). The standard of review in a pre-enforcement action is more limited than it would be in a challenge to enforcement of a rule in a contested-case appeal. *Id.* Specifically, courts have stated that "[b]road and far-reaching scrutiny" of a rule, based on hypothetical facts, would be a "premature exercise by the judiciary."

*Minnesota Educ. Ass'n v. Minnesota State Bd. of Educ.,* 499 N.W.2d 846, 849 (Minn. App.1993) (quoting *Minnesota–Dakotas Retail Hardware Ass'n v. State,* 279 N.W.2d 360, 363 (Minn.1979)).

■ This court applies the arbitrary and capricious standard when reviewing an agency's rulemaking proceedings. *Minnesota Chamber of Commerce,* 469 N.W.2d at 103. Administrative agencies enjoy a presumption of correctness, and courts should defer to an agency's expertise and special knowledge. *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977). The agency, however, "must explain on what evidence it is relying and how that evidence connects rationally with the agency's choice of action * * *." *Minnesota Chamber of Commerce,* 469 N.W.2d at 103.

■ Equal protection is "an inherent but unenumerated right found and confirmed in Minnesota's state constitution." *Lundberg by Lundberg v. Jeep Corp.,* 582 N.W.2d 268, 271 (Minn.App.1998). The Equal Protection Clause of both the state and federal constitutions requires equal application of the laws such that all people in similar circumstances are treated similarly. *Rocco Altobelli, Inc., v. State, Dep't of Commerce,* 524 N.W.2d 30, 37 (Minn.App.1994). An economic or social welfare classification will not be set aside under the Equal Protection Clause unless it is shown to have no rational or reasonable basis. *REM, Inc. v. Department of Human Services,* 382 N.W.2d 539, 542 (Minn.App. 1986). The preeminent expression of rationality analysis under the Equal Protection Clause is the requirement that legislative classifications make distinctions that are rationally related to legitimate legislative goals or interests. *AFSCME Councils 6, 14, 65 and 96, AFL–CIO v. Sundquist,* 338 N.W.2d 560, 570 (Minn.1983).

■ The legislature, in 1992, directed the department to establish rules to limit fees charged by QRCs. *See* Minn.Stat. § 176.102, subd. 2 (1992). Thus, the legislature determined, and petitioners do not dispute, that lowering the cost of rehabilitation services is a legitimate legislative goal. Further, it is not disputed that the rule at issue has the intended effect of lowering rehabilitation costs.

Petitioners contend, however, that the rule in question violates their right to equal protection because it unfairly distinguishes between two similarly situated groups: QRCs who on July 15, 1992, had on file a fee rate of $65 per hour or higher; and QRCs who had on file a fee rate of less than $65 per hour. Petitioners contend that as a result of the rate freeze QRCs in the latter group will now, and into the future, be paid progressively less than QRCs in the former group regardless of their experience, ability, or the quality of services they provided.

■ An essential element of an equal protection claim is that "the persons claiming disparate treatment must be similarly situated to those to whom they compare themselves." *St. Cloud Police Relief Ass'n v. City of St. Cloud,* 555 N.W.2d 318, 320 (Minn.App. 1996), *review denied* (Minn. Jan. 7, 1997). To withstand such a claim the difference between classes need not be great, and if any reasonable distinction can be found, a court should sustain the classification. *In re McCannel,* 301 N.W.2d 910, 917 (Minn.1980).

We disagree with petitioners' contention that the rule, when examined from a pre-enforcement perspective, unreasonably distinguishes between similarly situated classes of people. Rather, by freezing the rates as they existed on or before July 15, 1992, the rule merely codified the rate differences established by the QRCs themselves. These differences presumably reflected market forces that would otherwise be difficult to calculate, including ability, experience, and success rates. Thus, the department's decision to freeze existing rates was not arbitrary.

■ Petitioners argue the department could have imposed a ceiling on rates rather than a rate freeze, and further contend this would have been a more appropriate response to the legislative mandate to lower the costs of rehabilitative services. Petitioners did not make this argument or raise equal protection concerns at the hearing held to receive public comment on the rule. Further, and more importantly, it is not the role

of courts to determine the most efficient solution to a legislative problem. *See AFSCME*, 338 N.W.2d at 570 n. 13 (stating it is not the court's role "to make determinations regarding the economic efficiency or political effect of the legislative enactment.").

■ At the time of the hearing the department stated the rule at issue was limited in scope and designed as only an interim measure to be effective while "further study of a fee schedule or other means of limiting rehabilitation costs proceeds." Department of Labor and Industry Statement on Needs and Reasonableness, Dec. 18, 1992, p. 15. Petitioners contend that because the rule has been in effect since 1993 it can no longer be considered a temporary approach to limiting rehabilitation costs. This argument, however, goes beyond the rulemaking process and general validity of the rule when examined from a pre-enforcement perspective and therefore is not appropriate in this pre-enforcement challenge. If petitioners want to challenge the alleged inequitable *effects* of the rate freeze on individual QRCs, they must do so in contested litigation rather than in a pre-enforcement challenge. *See Minnesota Education Ass'n*, 499 N.W.2d at 850 ("If the MEA is to challenge the reasonableness of the rule as applied, it may make that challenge in a contested case hearing when the agency seeks to enforce the rule.").

# DECISION

Petitioners have failed to establish that Minn. R. 5220.1900, subpts. 1b and 1c, is not supported by a rational basis and that the rule, on its face, violates the Equal Protection Clauses of the Minnesota and United States Constitutions.

**Rule declared valid.**